Filed 4/9/14  P. v. Barrett CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058101 |
| v. | (Super.Ct.No. FCH900307) |
| LANCE C. BARRETT, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Gerard S. Brown, Judge.  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Kristen Kinnaird Chenelia and Amanda E. Casillas, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Lance Barrett is serving 15 years in prison for killing his prison cellmate. He pled guilty to voluntary manslaughter (Pen. Code, § 192, subd. (a))[1] with a deadly weapon enhancement (§ 12022, subd. (b)(1)), and assault by a prisoner (§ 4501.5), with two prior prison terms (§ 667.5). Defendant argues that under the plea agreement he should have received presentence custody credits from the date of the offense rather than from the later date determined by the Probation Department in a credit memo. He asked that either the credits be recalculated or he be allowed to withdraw his guilty plea. As discussed below, the plea agreement did not, and could not lawfully have, specified the date of the offense as the start date for presentence custody credits. This is because defendant was in prison on another matter at the time of the offense. Therefore we affirm the judgment.

**FACTS AND PROCEDURE**

*The Offense—March 14, 2008*

On March 14, 2008, defendant was a prisoner at the California Institute for Men in Chino. He was housed in a two-person cell with another inmate. At 8:50 p.m., correctional officers found the other inmate's body on the floor of the shared cell. The inmate had a towel twisted around his neck and a pool of blood under his head and neck. Defendant was lying down on the lower bunk bed "in a relaxed manner with a grin on his face." As officers were removing defendant from the cell, he looked down at the body, shook his head and said "Woo, woo, that sure is a lot of blood." Defendant also

---

[1] All section references are to the Penal Code unless otherwise indicated.

commented something like "There comes a time in every man's life when he must die." The cause of death was "strangulation with blunt head injuries."

*The Information—June 12, 2009*

On June 12, 2009, the People filed an information charging defendant with premeditated murder.  (§187, subd. (a))

*The Amended Information, Plea Hearing and Sentencing—November 27, 2012*

On November 27, 2012, the People amended the information to include voluntary manslaughter with the deadly weapon allegation, along with assault by a prisoner.  The information also newly alleged that defendant had two prior prison terms.  At the plea hearing on that date, the trial court first questioned defendant to determine whether he understood the charges, the plea agreement, and the rights he would be giving up.  The trial court then discussed the indicated sentence with defendant:  "My understanding you are going to plead guilty to added Count 2, voluntary manslaughter.  For that you're going to get the term—aggravated term, 11 years, and added Count 3, battery by a prisoner, you'll get one-third the midterm, you'll get a year consecutive for each of your prison priors, and another year for your [section] 12022[, subdivision] (b)(1), use of a deadly weapon.  So you'll get 15 years, and as you know, you'll get significant credits that date back to the date of your offense.  We'll order a credit memo dated back to the date of the offense, but that gives you kind of a ball park."

The court set a hearing for December 26, 2012, regarding credit for time served and ordered the Probation Department to prepare a credit memo.  The court then

dismissed the murder count and defendant plead guilty to the newly charged offenses and admitted the deadly weapon allegation and the two prior prison terms.  As agreed, the court sentenced defendant forthwith to 15 years as follows:  The aggravated term of 11 years for the manslaughter, one year for the assault, and consecutive one-year terms for the firearm enhancement and each of the two prison term priors.

*The Credit Memo Hearing—December 26, 2012*

The hearing on defendant's pre-sentence custody credits was heard as scheduled on December 26, 2012.  The one-page credit memo prepared by the Probation Department calculated 1247 days of actual presentence custody credit (for the time period June 30, 2009[2] to November 27, 2012), plus 187 good conduct days under section 2933.1, for a total of 1434[3] days of credit.  At the outset of the hearing, the trial court stated "And I have a credit memo saying that as of—and it's important that you put this in the minutes—as of November 27, [2012], Mr. Barrett has 1247 actual, 187 conduct, total of 1334 [*sic*].  And subject to you're—any possible issues you may raise on appeal concerning time that he may have spent in state prison prior to this being filed, do you go ahead and submit on that . . . ?"  Both the defense and the prosecution submitted.  The trial court advised defense counsel to let appellate counsel know to which courthouse that

---

[2]  The information was filed on June 12, 2009.  The date of the offense was March 14, 2008.

[3]  The record transcript indicates a total of 1334 days presentence credits.  The clerk's transcript shows the correct number of credits at 1434, as calculated in the credit memo.

4

judge was about to be transferred, so he could be quickly contacted to sign a certificate of probable cause. A discussion then ensued as to the proper courthouse in which to file the notice of appeal.

This appeal followed. The trial court granted defendant's request for a certificate of probable cause.

## DISCUSSION

Defendant contends the plea agreement entitled him to have his presentence custody credits calculated from the date of the offense—March 14, 2008, rather than June 30, 2009. He asks for either specific performance or the opportunity to withdraw his guilty plea. The People respond that, to the extent defendant did not forfeit this claim by failing to raise it at the custody credit hearing, the plea agreement does not make an award of custody credits beginning with the date of the offense a condition of his plea.

As defendant explains, "A vague reference to 'credit memo 12/26/12' is the only mention of custody credits on the guilty plea form that appellant signed." This is true— the plea agreement itself does not specify when defendant's presentence custody credits begin. Defendant bases his contention on the trial court's oral description of the credits he would receive under the plea agreement at the plea and sentencing hearing on November 27, 2012: "So you'll get 15 years, and as you know, *you'll get significant credits that date back to the date of your offense*. We'll order a credit memo *dated back to the date of the offense*, but that gives you a kind of ball park." The prosecution did not at that time object to this characterization of the credits defendant could expect.

5

Defendant replied "Yes, sir" to this statement from the trial court, as he then did to the court's advisals that he would serve 85 percent of his sentence, that he could suffer immigration consequences if he were not a citizen, that he would serve three to four years on parole, and that he could go back to prison for violating parole. Defendant replied similarly to the court's next questions as to whether his plea was free and voluntary, and whether anyone threatened him or made other promises.

The credit memo does not explain why defendant's presentence custody credits begin on June 30, 2009, rather than on the date of the offense—March 14, 2008. Defendant argues the memo is not faithful to the plea agreement as explained by the court at the plea hearing.

The People first argue that defendant waived his right to appeal the presentence credits calculation by failing to raise it in the trial court. We disagree. The trial court was apparently aware that the calculation of presentence credits was an issue, as indicated in its comments at the credit memo hearing regarding a certificate of probable cause, where to file an appeal, and specific instructions to be related to the anticipated appellate counsel.

However, we do agree with the People that defendant has failed to demonstrate that custody credits beginning with the date of the offense were a condition of his plea. First and foremost, this was not set forth in the plea agreement at all. The plea agreement merely referenced a "credit memo 12/26/12."

6

Second, although the trial court stated in its indicated sentence that presentence custody credits would begin "back to the date of the offense," at the very end of plea hearing the trial court clarified that the actual presentence custody credits awarded to defendant would be determined by a credit memo from the Probation Department: "The total time is 15 years in California State Prison *with credits to be determined by a credit for time served memo I'm ordering from probation*. We'll be come back on that, and the defendant will be brought to court on that, for the credit for time served memo on the 26th of December.

Third, as the People point out, calculation of presentence custody credits is governed by statute. It is a simple matter of mathematics, rather than a matter upon which a trial court, or the People in negotiating a plea agreement, can exercise discretion. (*People v. Aguirre* (1997) 56 Cal.App.4th 1135, 1139. In other words, neither the People nor the trial court had the authority to promise defendant that his presentence custody credits would begin on the date of the offense if he was at that time incarcerated on another matter. It appears from the record that defendant was indeed incarcerated on another matter—the offense took place while defendant was in prison. Allowing defendant's presentence custody credits to be calculated beginning with the date of the offense would have resulted in an unauthorized sentence under both statute and case law. "A defendant is not entitled to presentence custody credits when he or she is charged with a crime while already incarcerated and serving a sentence on a separate, earlier crime. [Citations.] The test is whether the defendant would have been free 'but for' his or her

7

incarceration on the second crime." (*People v. Gisbert* (2012) 205 Cal.App.4th 277, 281; See also § 2900.5, subd. (b) ["For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted."].) Thus, defendant has not established the calculation of presentence custody credits beginning with the date of the offense was a condition of his plea agreement.

Finally, defendant argues that the trial court at the credit memo hearing should have afforded him the opportunity to withdraw his guilty plea because the court deviated from the agreed-upon sentence when it implemented the credit memo instead of insisting he be given presentence custody credits back to the date of the offense. As discussed above, defendant has not carried his burden to establish that this was part of the plea agreement, as in fact it was not. Therefore, the court was under no obligation to allow defendant to withdraw his plea.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

RICHLI
J.

KING
J.

8